# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LAMONT RIPPY,

    Plaintiff,

v.

Case No. 09-CV-12043
Hon. Gerald E. Rosen

HOME DEPOT U.S.A., INC.,
a Delaware corporation,

    Defendant.

_____/

## OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit,
Michigan on    March 10, 2010

PRESENT:   Honorable Gerald E. Rosen
                 Chief Judge, United States District Court

### I. INTRODUCTION

Plaintiff Lamont Rippy filed this premises liability action in state court on April 17, 2009 against Defendant Home Depot U.S.A. Inc., a Delaware corporation with its principal place of business in Atlanta, Georgia. Plaintiff alleges that he was injured while shopping at Defendant's Burton, Michigan store, when a box of tiles fell on and fractured his big toe. Plaintiff is a resident of Genessee County, Michigan. Defendant removed the case to this Court on May 27, 2009, citing diversity of citizenship pursuant to 28 U.S.C. §

1332.

Through the present motion, Defendant seeks summary judgment in its favor, arguing that Plaintiff cannot establish that Defendant had notice of the complained of premises condition, or in the alternative, that the condition was open and obvious. Plaintiff, in response, argues that Defendant had a duty to inspect the tile aisle more often than it did. Plaintiff also argues that the stacks of tiles were not open and obvious to a customer like Plaintiff, who focused solely on the box of tile he planned to pick up and not on the surrounding boxes.

Having reviewed the parties' written submissions in support of and opposition to Defendant's motion, as well as the remainder of the record, the Court finds that the pertinent facts, allegations, and legal issues are sufficiently presented in these materials, and that oral argument would not assist in the resolution of this motion. Accordingly, the Court will decide Defendant's motion "on the briefs." <u>See</u> Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings on these motions.

## II. FACTS

On July 23, 2008, Plaintiff Lamont Rippy and his wife, Vickie, went on a shopping excursion to Defendant's Home Depot store in Burton, Michigan. The couple planned to buy floor tiles and cabinetry for a remodeling project. Once in the store, Plaintiff knew exactly the type of tiles he needed and where to locate them since he had already purchased some on a previous visit. In the floor covering aisle, Plaintiff took a box of

vinyl tiles from the top of a stack, at about waist level. As he reached to lift the box, another box fell on his right foot.[1] He claims that the impact caused so much pain that he was forced stand in that spot for several minutes before being able to walk.

Plaintiff's wife testified that boxes of tile were "scrambled around," "twisted or wasn't [sic] stacked neatly on top of each other or some pushed back." (Def. Mot. for Summ J., Ex. 3, Vickie Rippy Dep. 40:11-12, 88:14-16, Oct. 20, 2009.) Neither Plaintiff nor his wife knew whether someone had been in the aisle immediately before the Rippys arrived or how long the alleged condition existed. The couple testified that they were the only people in the floor covering aisle at the time of the incident.

---

[1] It is not clear from the record where exactly the falling box originated: either the 45 degree angled display rack used to show individual tiles at eye level or the stacks of tile boxes underneath. Plaintiff did not see the box fall. (Def. Mot. for Summ J., Ex. 1, Lamont Rippy Dep. 92:3-6, Oct. 20, 2009.) He nevertheless testified that he was "just about positive" that the box fell from one of the shelved stacks, located below the angled display at about waist height. (Lamont Rippy Dep. 94:5-10.) When asked how he knew where the box was located before it fell if he did not see it fall, Plaintiff responded, "I don't." (Lamont Rippy Dep. 93:23-94:1.) A Home Depot employee testified that after visiting the scene of Plaintiff's injury and questioning him about the incident, Plaintiff told him that the box that hurt his foot fell from the single tile display rack. (Pl.'s Resp. to Mot. for Summ. J., Ex. 3, William Whitehead Dep. 27:3-6, Dec. 22, 2009.) Another employee testified that boxes of tiles were never stored on the 45 degree angled display rack; if a box was on that rack, it would have been put there by a customer. (Def.'s Reply, Ex. A, Joseph Pastor Dep. 41:4-8, Dec. 22, 2009.)

Plaintiff also submits the analysis of a purported safety expert, George Bombyk. (See Pl.'s Resp., Ex. 11, Bombyk Report.) The report includes unsubstantiated conclusions about the origin of the box, after acknowledging that neither Plaintiff nor his wife saw the box before it fell. For example, Mr. Bombyk writes, "[The angled shelf] is the only logical place where a packaged box of tiles could have fallen from with sufficient impact force to devastate [Plaintiff's] toe." (Id. at 3.) He later writes: "It is clear that the box that fell . . . was . . . from a nearby stack without any contact or other activity by the injured party." (Id. at 4.)

After the box fell, Plaintiff and his wife continued to shop—Plaintiff hobbling along or using the shopping cart for support. They eventually checked out and, with the help of two store employees, loaded the cabinetry, tiles and other purchases into their car.[2] Later the same day, Plaintiff visited an after hours health clinic where he learned that his toe was fractured. Plaintiff returned to the store to report the incident. He spoke to William Whitehead, an assistant store manager, at the customer service desk. Whitehead wrote up an incident report and took witness statements from three employees who had helped Plaintiff after the incident: the cashier and the two who helped him load his car. Plaintiff subsequently filed this action on April 17, 2009.

## III.  ANALYSIS

**A.     The Standards Governing Defendant's Motion**

Through the present motion, Defendant Home Depot U.S.A. Inc. seeks summary judgment on Plaintiff's premises liability claim. See Fed. R. Civ. P. 56. Under the pertinent Federal Rule, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Supreme Court has explained, "the plain language of Rule 56(c)

---

[2] Defendant challenges Plaintiff's characterization of his injury, noting that in surveillance video footage of Plaintiff moving through checkout and out to his car, he appears to be ambling easily and even helping store employees unload the heavy purchases. Plaintiff counters that the video does in fact show Plaintiff's difficulty in walking. After watching the surveillance footage, Plaintiff's wife testified in an affidavit that her husband appeared to have an "altered gait." (Vicki Rippy Aff. ¶ 8.)

mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. Pack v. Damon Corp., 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party "may not rely merely on allegations or denials in its own pleading," but "must — by affidavits or as otherwise provided in [Rule 56] — set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Moreover, any supporting or opposing affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." Pack, 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).[3]

---

[3] Plaintiff's brief in response to Defendant's motion bafflingly cites a 1945 Second Circuit Court of Appeals opinion to describe the standard of review applicable in this case. (Pl.'s Br. 8) (citing Doehler Metal Furniture Co. v. United States, 149 F.2d 130, 135 (2d Cir. 1945). While some say that classics never go out of style, the federal courts' understanding and application of the summary judgment standard has certainly evolved over the decades. Plaintiff's counsel may wish to revisit his reliance on moth-eaten case law.

**B. Plaintiff Fails To Provide Sufficient Evidence that Defendant and Its Employees Failed to Monitor the Floor Covering Aisle and That Store Employees Knew That Tile Boxes Had Been Improperly Stacked.**

Plaintiff has asserted a premises liability claim based on an injury arising out of a condition on the property—namely, unsafely stacked boxes of tile. Because this is a diversity action, the Court applies state law "in accordance with the controlling decisions of the state supreme court." Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc., 249 F.3d 450, 454 (6th Cir. 2001). The parties concede that Michigan law controls.

Premises liability actions arise out of a store owner's general duty to provide safe premises for business invitees. Whitmore v. Sears, Roebuck & Co., 89 Mich. App. 3, 7, 279 N.W.2d 318 (1979). A store owner, however, is not an absolute insurer of the safety of invitees. Williams v. Cunningham Drug Stores, Inc., 429 Mich. 495, 500, 418 N.W.2d 381 (1988). As with general negligence claims, a plaintiff asserting premises liability must establish: (1) that the defendant owed a legal duty to the plaintiff; (2) that the defendant breached or violated that legal duty; (3) that the plaintiff suffered damages; and (4) that the defendant's breach of duty was a proximate cause of the damages suffered by the plaintiff. Riddle v. McLouth Steel Products, 440 Mich. 85, 96 n. 10, 485 N.W.2d 676 (1992). The first element, duty of care, is a matter of law to be decided by the court. Id. at 95. In premises liability actions, Michigan courts have long adopted the following formulation of the shopkeeper's duty:

> It is the duty of a storekeeper to provide reasonably safe aisles for customers and he is liable for injury resulting from an unsafe condition either caused by the active negligence of himself and his employees or, if

> otherwise caused, where known to the storekeeper or is of such a character or *has existed a sufficient length of time that he should have had knowledge of it*.

Serinto v. Borman Food Stores, 380 Mich. 637, 640-641, 158 N.W.2d 485 (1968) (emphasis in original); accord Clark v. Kmart Corp., 465 Mich. 416, 419-20, 634 N.W.2d 347 (2001).

In this case, the parties agree that Plaintiff is an invitee and that Defendant owes him a general duty to provide safe premises. Nevertheless, Defendant argues that it did not have notice—actual or constructive—of the allegedly unsafe condition at issue here. Plaintiff in turn does not dispute that Defendant lacked notice. Instead, he alleges that Defendant was negligent in failing to inspect the area at regular intervals. While a store keeper may indeed have a duty to inspect the premises at reasonable intervals, see Torma v. Montgomery Ward & Co., 336 Mich. 468, 482, 58 N.W.2d 149 (1953), Plaintiff's allegation that Defendant failed to do so in this case is based on a selective reading of deposition testimony. Assistant Manager William Whitehead testified that store regulations mandate two safety inspections daily: one at the start and one at the close of business. (Whitehead Dep. 65:25-66:6.) However, further testimony indicates that these twice-daily inspections are only the baseline minimum and that individual associates are additionally tasked with monitoring each aisle throughout the day to ensure safety and appropriate placement of products. (Whitehead Dep. 69:21-23; Pastor Dep. 31:7-22, 41:11-13.) Defendant also maintains an "In Focus" team which combs the store, monitoring for possible safety issues, on an on-going basis. (Pastor Dep. 31:23-24.)

Finally, store rules and regulations control how items are stored on shelves. (Whitehead Dep. 58:2-6.) There is no evidence to suggest that Defendant employees did not follow the foregoing guidelines on the day of Plaintiff's injury.[4] Plaintiff's allegation that Defendant did not monitor the floor covering aisle in the time period before the Rippys arrived is purely speculative and unsupported by the record. There is no testimony from which one may infer that the boxes were in such condition *as a result of* the actions or inaction of Defendant's employees.[5]

---

[4] Plaintiff makes much of the fact that the department head for floor covering at the store, Joseph Pastor, did not learn of the event until the week before his deposition in December 2009. Whether he was directly notified of the event *afterward* appears to be irrelevant for purposes of establishing whether the aisle was actually being properly monitored for safety issues *before* the event.

[5] The Court need not and does not consider the testimony of purported safety expert George Bombyk, who after reviewing the record concluded that "it is obvious that some employee failed to perform his or her job properly." (Bombyk Report 5.) Rule 702 of the Federal Rules of Evidence regarding expert testimony provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed. R. Evid. 702. To qualify as an expert under Rule 702, a witness must first establish his expertise by reference to "knowledge, skill, experience, training, or education." Id. Once the proposed expert has crossed the foundational threshold of establishing his personal background qualifications as an expert, he must then provide further foundational testimony as to the validity and reliability of his theories. Berry v. Crown Equipment Corp., 108 F. Supp. 2d 743, 749 (E.D. Mich. 2000) (citing Isely v. Capuchin Province, 877 F. Supp. 1055, 1064 (E.D. Mich. 1995), Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed.2d 469 (1993)("Proposed testimony must be supported by appropriate validation-i.e., 'good grounds,' based on what is known."). Assuming *arguendo* that expert testimony would assist the trier of fact

Without establishing when the condition arose, Plaintiff similarly cannot rebut Defendant's argument that it lacked notice of the "scrambled" boxes of tile. Specifically, the fact that the boxes of tiles were "scrambled" does not alone support an inference that the condition had existed for a considerable period of time, evidence from which the inference could be drawn that Defendant should have known of its presence. Compare Clark, 465 Mich. at 420, 634 N.W.2d 347 (holding that evidence that check-out lane had been closed for about an hour before customer fell was sufficient to create jury question as to whether dangerous condition caused by grapes that were scattered on floor of lane existed for a sufficient period of time to put store on constructive notice of the condition). Viewing the record in a light most favorable to Plaintiff, it is just as plausible that a customer misplaced boxes of tile immediately or shortly before the Rippys entered the flooring aisle. Even assuming the condition existed when the box fell on Plaintiff's foot, "how and when it came there are matters of conjecture." Whitmore, 89 Mich. App. at 9, 279 N.W.2d 318. Without some evidence indicating that the condition "existed a sufficient length of time that [Defendant] should have had knowledge of it," Plaintiff cannot satisfy the first element of his *prima facie* case and judgment in Defendant's favor

---

and that Plaintiff has established Mr. Bombyk's qualifications—a shaky premise in light of this Court's evaluation of Mr. Bombyk's expertise in an earlier case, see Berry, *supra*, 108 F. Supp. 2d at 750-51—the report is wholly devoid of foundational testimony, and, much like Plaintiff's brief, is largely premised on speculation.

is proper. Serinto, 380 Mich. at 640-641, 158 N.W.2d 485.[6]

C.     **Even If Defendant Was On Notice That the Boxes Were Haphazardly Stacked, The Condition Was Open and Obvious.**

The Michigan Supreme Court has held that "where dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee." Riddle, 440 Mich. at 96, 485 N.W.2d 676. Here, Defendant argues in the alternative that the stacked boxes were open and obvious and thus did not give rise to a special duty to protect Plaintiff. Plaintiff counters that the danger was not open and obvious because he was focused solely on the box of tile that he was lifting and not on the state of surrounding boxes.

In general, a shopkeeper's duty to exercise reasonable care to protect invitees from unreasonable risks of harm caused by a dangerous condition on the premises does not

---

[6] Plaintiff also invokes the doctrine of *res ipsa loquitur*, which creates an inference of negligence when the plaintiff is unable to prove the actual occurrence of a negligent act. See Jones v. Porretta, 428 Mich. 132, 150, 405 N.W.2d 863 (1987). The doctrine requires a showing that the complained of event is the kind which ordinarily does not occur in the absence of someone's negligence, and that the event was caused by an agency or instrumentality within the exclusive control of the defendant. Id. at 150-51. In addition, Michigan courts have held that "when using *res ipsa loquitor* to infer negligence, [a] plaintiff must produce some evidence of wrongdoing beyond the mere happening of the event." See Moore v. Target Corp., 544 F. Supp. 2d 604, 608 (E.D. Mich. 2008) (internal citation and quotation omitted). Clearly, this doctrine is inapplicable where the stacked boxes of tile were not within the store's exclusive control and Plaintiff has proffered no evidence of the store's wrongdoing. As discussed above, a customer could have easily left boxes in disarray before an associate had an opportunity to walk through and tend to the display.

10

encompass removal of open and obvious dangers. Lugo v. Ameritech Corp., Inc., 464 Mich. 512, 516, 629 N.W.2d 384 (2001).

> [W]here the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee.

Id. (quoting Riddle, 440 Mich. at 96, 485 N.W.2d 676). This doctrine "should not be viewed as some type of 'exception' to the duty generally owed invitees, but rather as an integral part of the definition of that duty." Id. Finally, "if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." Id. at 517, 629 N.W.2d 384.

Plaintiff has failed to show that the alleged condition was not open and obvious. Instead, he argues that he could not be expected to notice the twisted boxes because he was not looking: his attention was focused elsewhere at the time. As Defendant points out, the open and obvious doctrine standard is objective. See id. at 516, 629 N.W.2d 384; Joyce v. Rubin, 249 Mich. App. 231, 238, 642 N.W.2d 360 (2002).

> The test to determine if a danger is open and obvious is whether "an average user with ordinary intelligence [would] have been able to discover the danger and the risk presented upon casual inspection." Novotney v. Burger King Corp. (On Remand), 198 Mich. App. 470, 475, 499 N.W.2d 379 (1993). Because the test is objective, this Court "look[s] not to whether plaintiff should have known that the [condition] was hazardous, but to whether a reasonable person in his position would foresee the danger." Hughes v. PMG Bldg., Inc., 227 Mich. App. 1, 11, 574 N.W.2d 691 (1997).

Joyce, 249 Mich. App. at 238-39, 642 N.W.2d 360. Here, viewing the evidence in a light

most favorable to Plaintiff, it is clear that "an average user with ordinary intelligence [would] have been able to discover" the twisted stacks of boxes. Novotney, 198 Mich. App. at 475, 499 N.W.2d 379. Both Plaintiff and his wife admitted that nothing obstructed his vision of the tile display. Plaintiff also testified that had he looked he would have seen the surrounding stacks of boxes. A photograph submitted by Plaintiff shows him standing in the floor covering aisle the day after the incident: it appears to be well-lit and features open-shelving. Taken together, there is no evidence to suggest that the condition was somehow hidden or non-obvious to the average shopper.

Plaintiff's argument that the condition was not open and obvious because he did not see the "scrambled" boxes is unavailing. Plaintiff testified at deposition that he only focused on "what was at hand," and thus did not see the surrounding display. (Lamont Rippy Dep. 101:16.) However, Plaintiff's subjective perception of the aisle is not relevant to the application of the open and obvious doctrine. In fact, Michigan courts have routinely rejected precisely this argument. See, e.g., Cameron v. J&J Hospitality, Inc., No. 275380, 2007 WL 4463915, at *2 (Mich. Ct. App. Dec. 20, 2007); Siegel v. Orchard Mall, LLC, No. 263209, 2005 WL 2806229, at *2 (Mich. Ct. App. Oct. 27, 2005); Champagne v. Licari, No. 254372, 2005 WL 2444838, at *1-2 (Mich. Ct. App. Oct. 4, 2005); Smokoska v. Gibraltar Trade Ctr N, Inc., No. 25276, 2005 WL 1123632, at *2 (Mich. Ct. App. May 12, 2005); Crawford v. CVS/Pharmacy, No. 248378, 2004 WL 2291384, at *2 (Mich. Ct. App. Oct. 12, 2004).

Plaintiff has likewise failed to demonstrate that there were special aspects of the

condition that rendered it "unreasonably dangerous"—for example, that the twisted stacks of boxes caused an unavoidable danger or posed "an unreasonably high risk of severe injury." Lugo, 464 Mich. at 516-17, 629 N.W.2d 384   There is nothing unusual about a display that has been riffled through by other patrons.  The Court thus finds that Plaintiff has failed to proffer evidence that takes this situation outside the scope of the open and obvious doctrine.  Defendant owed no duty to protect or warn Plaintiff from a harm that was objectively foreseeable.

## IV.  CONCLUSION

Having found that Plaintiff failed to carry the burden of establishing a *prima facie* case against Defendant,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant Home Depot U.S.A. Inc.'s December 23, 2009 Motion for Summary Judgment [**Dkt. # 15**] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff Lamont Rippy's Complaint is hereby DISMISSED.

SO ORDERED.

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated: March 10, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 10, 2010, by electronic and/or ordinary mail.

s/Ruth A.Gunther
Case Manager
(313) 234-5137